# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MELANCON ET AL** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 17-12367** |
| **LAMORAK INSURANCE COMPANY ET AL.** | * | **SECTION L (1)** |

## ORDER & REASONS

Before the Court is Plaintiff's motion to remand. R. Doc. 36. Defendants respond in opposition. R. Doc. 53. Having heard oral argument, read the parties' briefs, and reviewed the applicable law, the Court now issues this Order & Reasons.

## I. BACKGROUND

Plaintiffs Sandra Melancon, widow of Tyrone Melancon, and Lynn Melancon, daughter of Tyrone Melancon, filed this case in the Civil District Court of Orleans and allege that Tyrone Melacon, their husband and father, was exposed to asbestos when he worked for Avondale Shipyard. This exposure, Plaintiffs allege, resulted in Tyrone Melancon contracting mesothelioma. In their petition, Plaintiffs assert the following theories of recovery: negligence and failure to warn.

On November 13, 2017, Defendants J Melton Garrett, Lamorak Insurance Company, Huntington Ingalls Incorporated (Avondale Shipyard's successor), and Albert Bossier, Jr. (together "Huntington Ingalls") removed the case to this Court under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1). In support of its Notice of Removal, Huntington Ingalls states that in deposition testimony given for another case Tyrone Melancon said that he worked on Navy Destroyer Escorts and Coast Guard Cutters. Therefore, Huntington Ingalls asserts that this Court has jurisdiction pursuant to the Federal Officer Removal Statute because Huntington Ingalls was "acting under an officer of the United States or an agency thereof" when it built the Destroyer

1

Escorts and Cutters in question. R. Doc. 1 at 4-5. Additionally, Huntington Ingalls claims two federal defenses: 1) government contractor immunity and 2) pre-emption and bar under the provisions of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). R. Doc. 1 at 6.

## II. PENDING MOTION

### a. Plaintiffs' Motion to Remand (R. Doc. 36)

Plaintiffs argue that this Court does not have jurisdiction pursuant to the Federal Officer Removal Status and avers that this Court, along with other Eastern District and Fifth Circuit Judges, have rejected identical removal arguments put forth by these and other defendants. R. Doc. 36-1 at 2-5. Moreover, Plaintiffs note that Courts have rejected Federal Officer Removal arguments for military shipbuilders based solely on evidence that the military required contactor-builders to follow military plans and specifications. R. Doc. 36-1 at 6.

Looking to the specific facts of this case, Plaintiffs claim that "Avondale controlled all of the activities in regard to the construction of commercial and Navy vessels" and "government inspectors had absolutely no control over nor did they direct the Avondale safety department." R. Doc. 36-1 at 15. Rather, Plaintiffs allege that "[t]he Navy was a customer just like any other customer of Avondale." R. Doc. 36-1 at 15. Based on these facts, Plaintiffs argue that Huntington Ingalls cannot meet the requirements for Federal Officer Removal. Additionally, Plaintiffs cite the deposition of former Navy ship inspector at the Avondale Shipyards, Felix Albert, who testified that "[t]he United States government inspectors neither monitored nor enforced safety regulations. On the job safety during the construction of vessels for the United States government was the responsibility of Avondale Shipyards' safety department." R. Doc. 36-1 at 15.

### b. Defendants' Response (R. Doc. 53)

Huntington Ingalls opposes the motion. R. Doc. 53. Huntington Ingalls argues that this case is removable on three grounds: 1) plaintiffs' allegations of strict liability, 2) plaintiffs' negligence claims, and 3) plaintiffs' strict products liability claim against Co-Defendant Foster Wheeler. R. Doc. 53 at 10.

Huntington Ingalls alleges that Plaintiffs have brought a strict liability claim against it because in paragraph 14 of the complaint there are care, custody, and control allegations similar to those held by the Fifth Circuit to allege strict liability claims. R. Doc. 53 at 17. Huntington Ingalls argues that these claims relate to its conduct under color of federal office. R. Doc. 53 at 20. Huntington Ingalls also argues that the "relating to" element is satisfied by Plaintiffs' negligence claims under the new test for this element. R. Doc. 53 at 21. Huntington Ingalls argues that under *Zeringue v. Crane Co.*, 846 F.3d 785 (5th Cir. 2017), the 2011 amendment to the federal officer removal statute created a new, broader test that merely requires an association or connection with the federal office. R. Doc. 53 at 22, 27. Huntington Ingalls further avers that the facts here are different from those in *Bartel v. Alcoa S.S. Co.*, 805 F.3d 169 (5th Cir. 2015), because here the Navy and Coast Guard required Huntington Ingalls to use asbestos and maintained oversight of the projects. R. Doc. 53 at 26.

Finally, Huntington Ingalls argues that this case is properly removed based on strict liability claims against Co-Defendant Foster Wheeler. R. Doc. 53 at 43. Huntington Ingalls argues that there are strict liability claims against Foster Wheeler for use of asbestos in boilers that were installed on U.S. Navy vessels. R. Doc. 53 at 44. Huntington Ingalls further argues that Foster Wheeler meets all of the requirements of the federal officer removal statute. R. Doc. 53 at 45-47. Finally, Huntington Ingalls argues that it does not matter than Foster Wheeler has withdrawn its

notice of removal because jurisdiction is determined at the time of removal. R. Doc. 53 at 47. For these reasons, Huntington Ingalls asks the Court to deny Plaintiffs' motion for remand. R. Doc. 53.

## III. LAW & ANALYSIS

### a. Legal Standard

The removing defendant carries the burden of showing the existence of federal jurisdiction. *See Jernigan v. Ashland Oil, Inc.*, 989 F.3d 812, 815 (5th Cir. 1993). The Defendants base their removal on the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), which provides, in pertinent part:

> (a) A civil action . . . commenced in a State Court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
>> (1) The United States . . . or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for or relating to any act under color of such office . . . .

28 U.S.C. 1442(a)(1).

Though generally remand to state court is favored when removal jurisdiction is questionable, removal jurisdiction under the Federal Officer Removal Statute must be broadly construed. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *Watson v. Philip Morris Companies*, 551 U.S. 142 (2007). The Court must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction. *See Louisiana v. Sparks*, 978 F.2d 226 (5th Cir. 1992).

However, liberal construction does not mean that the statute's broad language should be interpreted to imply limitless application. *Watson*, 551 U.S. at 3 (reviewing statutory history, context, purpose and language and finding that the fact that a federal agency directs, supervises,

4

and monitors a company's activities in considerable detail does not bring a company within the scope of the statute's language). As the purpose of this statute is to provide a federal forum in cases where federal officials are entitled to raise a defense arising out of their official duties, *see Arizona v. Manypenny*, 451 U.S. 232, 241 (1981); *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998), the United States Supreme Court has consistently repeated that the "statute authorized removal by private parties 'only' if they were authorized to act with or for federal officers or agents in affirmatively executing duties under . . . federal law." *Watson*, 551 U.S. at 7.

The Federal Officer Removal Statute only confers jurisdiction if the removing defendant can demonstrate that (1) the defendant is a "person" within the meaning of the statute; (2) the defendant acted pursuant to a federal officer's directions when committing the acts that allegedly give rise to the injury at issue; and (3) that a causal connection exists between the defendant's actions under color of federal office and the plaintiff's claims. *Bartel v. Alcoa S.S. Company*, 805 F.3d 169, 172 (5th Cir. 2015). Finally, the defendant must also show that it can assert a colorable defense. *Savoie v. Huntington Ingalls*, 817 F.3d 457, 460 (5th Cir. 2016).

### b. Huntington Ingalls

Here, it is clear that Huntington Ingalls is a person within the meaning of the statute and was acting pursuant to a federal officer's directions when it built the vessels on which Mr. Melancon worked. Therefore, the primary question concerning the claims against Huntington Ingalls is whether Huntington Ingalls has established the requisite causal nexus.

### i. Causal Nexus Requirement

The causal nexus requirement serves to limit claims that can be removed to those where there is a legitimate federal interest. This is accomplished by requiring that defendant's act or

omission, on which the plaintiff's claims are based, were done under direction of a federal officer. *See Winters*, 149 F.3d at 398. With respect to negligence claims, the Fifth Circuit has found that the claims do not support removal because the claims challenge discretionary acts rather than acts directed by a federal officer. *Savoie*, 817 F.3d at 463; *see also Bartel*, 805 F.3d at 173 (finding that defendant's safety measures were not directed by a federal officer).[1]

In *Bartel v. Alcoa S.S. Company*, the Fifth Circuit reasoned that in considering the causal nexus prong, it is "important to understand the nature of the plaintiffs' allegations [for] failure to warn, failure to train, and failure to adopt procedures for the safe installation and removal of asbestos." 805 F.3d at 173. Therefore, the Court must "consider whether the federal government exercised control over safety requirements such that a failure to warn was caused by the government's instructions." *Mayeaux v. Taylor-Seidenbach, Inc.*, No. 16-16813, 2017 WL 3499242, at *10 (E.D. La. Aug. 15, 2017) (citing *Bartel*, 805 F.3d at 173). Remand is proper when defendants can show only that the government owns the relevant vessels and fails to produce evidence that the government distributed safety procedures regarding use of asbestos. *See Bartel*, 805 F.3d at 174; *Templet v. Avondale Industries, Inc.*, No. 17-5935, 2017 WL 3332644 (E.D. La. Aug. 4, 2017) (holding that employer failed to show causal nexus when its discretionary decisions alleged in plaintiff's claims were not related to its actions under color of federal office); *Legendre v. Huntington Ingalls Inc.*, No. 17-2162, 2017 WL 1458209 (E.D. La. Apr. 25, 2017) (same).

### c. Negligence & Failure to Warn Claims

Here, Plaintiffs' claims do not depend on the fact that Huntington Ingalls possessed

---

[1] Huntington Ingalls has suggested that *Bartel* and *Savoie* are no longer good law. However, subsequent case law has only affirmed and/or distinguished these cases and Huntington Ingalls has been unable to show that *Bartel* should be distinguished here. *See Blouin v. Huntington Ingalls Inc.*, 2017 WL 2628103, at *6 (E.D. La. June 19, 2017), *appeal docketed*.

6

asbestos, because the mere possession of asbestos did not allegedly cause Plaintiffs' injury. Rather, Plaintiffs go out of their way to demonstrate that their claims rest on Huntington Ingalls' alleged failure to properly handle asbestos, causing injury to Tyrone Melancon. In other words, Huntington Ingalls' failure to use the asbestos safely, and not the mere use of asbestos, gives rise to Plaintiffs' claims. This distinction, as highlighted by this Court and the Fifth Circuit, makes the claims against Huntington Ingalls negligence claims.

Like the plaintiffs in *Bartel*, Plaintiffs here have asserted negligence claims against Huntington Ingalls. Because these claims center on how Huntington Ingalls chose to handle asbestos, the evidence brought by Huntington Ingalls fails to satisfy the causal nexus requirement for these theories of liability. It is clear that the U.S. Navy mandated the use of asbestos in constructing its vessels. However, Huntington Ingalls has failed to present the Court with evidence that the U.S. Navy mandated *how* Huntington Ingalls handled those materials. Huntington Ingalls has not demonstrated any government control over safety procedures or use of asbestos, nor shown that the government prevented Huntington Ingalls from taking protective measures suggested by Plaintiffs. Such control is necessary to satisfy the causal nexus requirement. Furthermore, Huntington Ingalls has failed to demonstrate any evidence that the U.S. Navy restricted their ability to warn their employees of the present of asbestos in their work environment and of the dangers of this exposure.

"In other words, [Huntington Ingalls] has not demonstrated that its own discretionary decisions to allegedly fail to warn or protect [Tyrone Melancon] from the damages of asbestos while [he] was employed by Avondale resulted from or is 'related to' its actions under color of federal office." *Templet*, No. 17-5935, 2017 WL 3332644, at *10. Additionally, Huntington Ingalls has failed to distinguish this case from clear Fifth Circuit precedent and numerous holdings by this

7

Court. Thus, Huntington Ingalls fails to satisfy the causal nexus requirement and the claims against Huntington Ingalls cannot support federal officer removal.

Huntington Ingalls next argues that, in their complaint, Plaintiffs have specifically alleged strict liability claims. Huntington Ingalls avers that Plaintiffs' claims here are identical to the strict liability claims in *Savoie*. *See Savoie*, 817 F.3d at 463-64.[2] However, Plaintiffs' claims are critically different than those in *Savoie* because they do not in fact allege strict liability.[3] Furthermore, the Fifth Circuit has upheld this Court's prior interpretation of similar claims as negligence claims. *See Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 715 (5th Cir. 2015). Therefore, the Court finds that Plaintiffs have not alleged strict liability claims against Huntington Ingalls.

Because Huntington Ingalls cannot establish the requisite federal causal nexus, there is no need to discuss whether it has asserted a colorable federal defense.

### d. Foster Wheeler

Finally, Huntington Ingalls argues that this case is properly removed based on Plaintiffs' strict liability claims against Co-Defendant Foster Wheeler. In their complaint, Plaintiffs' allege the following:

> The asbestos-containing products manufactured, distributed and/or sold by
> . . . Foster Wheeler LLC were *unreasonably dangerous per se*, were defective in design, and constituted a breach of warranty from said manufacturers. Further, these defendants failed and refused to warn Mr. Melancon of the danger of exposure to such products. They also failed to warn of the invisible nature of the asbestos and that it could cause diseases such as mesothelioma, cancer, asbestosis, pleural diseases, and other ill health effects.

---

[2] "All defendants had care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of Mr. Savoie and for which these defendants are *strictly* liable under Louisiana law." *Savoie*, 817 F.3d at 463-64 (emphasis added).
[3] "All asbestos companies had care, custody, and control of the asbestos, which asbestos was defective and which presented an unreasonable risk of harm, which asbestos resulted in the injury of Mr. Melancon and for which these defendants are liable under Louisiana law." R. Doc. 1-14 at 6.

R. Doc. 1-14 at 21 (emphasis added). Huntington Ingalls alleges that this paragraph contains a strict liability claim against Foster Wheeler which entitles Foster Wheeler to Federal Officer Removal. Plaintiffs' complaint does allege a strict liability claim against Foster Wheeler and there is no question that Foster Wheeler is a person within the meaning of the federal officer removal statute. Therefore, the Court will focus on the next element and whether Foster Wheeler was acting under a federal officer when committing the acts that allegedly gave rise to the Plaintiffs' injuries.

In order to be acting under the color of federal authority for the purposes of federal officer removal, the Supreme Court has looked to whether the defendant "is helping the Government to produce an item that it needs [or is] perform[ing] a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." *Watson*, 551 U.S. at 153-54. Huntington Ingalls avers that Foster Wheeler produced boilers for installation on U.S. Navy vessels pursuant to the direction of the U.S. Navy. Presumably, the federal government would have had to produce these boilers in the absence of a contract with Foster Wheeler or other manufacturer.

However, the problem here is that there is no evidence that Mr. Melancon was ever exposed to Foster Wheeler boilers produced for the federal government. For decades Foster Wheeler manufactured boilers that were installed on both commercial and U.S. Navy vessels. When producing boilers for use on U.S. Navy vessels, Foster Wheeler was acting under a federal officer. *See Pitre, et al. v. Huntington Ingalls, Inc., et al.*, 2017 WL 6033032 at *8 (E.D. La. Dec. 6, 2017). However, when producing boilers for commercial use Foster Wheeler was not acting under a federal officer because the military had no authority to provide directions or specifications for the production of commercial boilers.

Plaintiffs allege that Mr. Melancon was exposed to asbestos by a Foster Wheeler product.

9

R. Doc. 1-14 at 21. Plaintiffs further allege that Foster Wheeler manufactured boilers for use on both commercial and U.S. Navy vessels. R. Doc. 1-14 at 29-30. Plaintiffs do not allege that Mr. Melancon was exposed to Foster Wheeler boilers manufactured for use on a U.S. Navy vessel. These pleadings are broad and not definitive as to whether Foster Wheeler was acting under a federal officer in relation to Plaintiffs' claims. Therefore, the Court will look to the facts to make that determination.

Huntington Ingalls suggests that Mr. Melancon was exposed to Foster Wheeler boilers while working aboard U.S. Navy Destroyer Escorts. According to his deposition testimony, Mr. Melancon worked at Avondale Shipyards from 1965-2002. R. Doc. 63-4 at 5. During that time he worked exclusively in the Electrical Department. R. Doc. 63-4 at 5. At the time Mr. Melancon was working for Avondale, nearly all of the U.S. Navy vessels produced there contained boilers built by companies other than Foster Wheeler. R. Doc. 63-5. Huntington Ingalls points to one vessel, built in 1965, that contained a Foster Wheeler boiler. This vessel was the Destroyer Escort 1045. The DE 1045 was being finished when Mr. Melancon began his career. Mr. Melancon testified that he "worked on the last 1045 that was being completed." R. Doc. 63-4 at 7. Mr. Melancon's work on the 1045 lasted "a couple of months." R. Doc. 63-4 at 7. Describing his work at the time, Mr. Melancon stated that he "did the cable pulling and the equipment installation" and that he worked in the "radio room, teletype room, C.I.C., [and] pilothouse." R. Doc. 63-4 at 8. Mr. Melancon specifically testified that his "job wasn't involved in the engine room" where the boilers were located. R. Doc. 63-4 at 9. Because Mr. Melancon was not working in the engine room of the 1045 in 1965 and there were no Foster Wheeler boilers installed on the other U.S. Navy ships on which he worked, there is no basis to suggest that Mr. Melancon was exposed to asbestos via a Foster Wheeler boiler produced for the U.S. Navy.

10

"Federal jurisdiction rests on a 'federal interest in the matter,' the very basic interest in the enforcement of federal law through federal officials." *Willingham*, 395 U.S. at 406 (internal citations omitted). Here, because the only other Foster Wheeler boilers to which Mr. Melancon could have been exposed were manufactured for commercial use, Foster Wheeler was not acting under a federal officer when producing them and there is no federal interest in the matter.[4] Therefore, Foster Wheeler fails the acting under requirement and Plaintiffs' claims against Foster Wheeler cannot support federal officer removal.

IV. **CONCLUSION**

For the aforementioned reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Remand, R. Doc. 36, is **GRANTED**.

New Orleans, Louisiana, this 19th day of January, 2018.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Avondale supports its argument for federal officer removal via Foster Wheeler by pointing to *Pitre, et al. v. Huntington Ingalls, Inc., et al.*, 2017 WL 6033032 (E.D. La. Dec. 6, 2017). In *Pitre* the Court found that there were Foster Wheeler boilers on three ships produced for the U.S. Navy during the time plaintiff worked at Avondale and it was highly likely that plaintiff worked on those vessels. *Id.* at 7. The facts of this case are easily distinguished because there is no evidence that Mr. Melancon was exposed to Foster Wheeler boiler aboard a U.S. Navy ship. In fact, he only worked for a couple of months on a ship that even had a Foster Wheeler boiler installed.